UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JERRY L. COLBURN,

                    Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

                    Defendant.

NO. SAC 07-00962-SS

**MEMORANDUM   DECISION   AND   ORDER**

## I.   INTRODUCTION

     Jerry Colburn ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is AFFIRMED.

\\

## II.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB on February 3, 2005 and SSI benefits on February 4, 2005, alleging insomnia due to an intracranial injury.  (AR 81-85, 93, 382).  His applications were denied on July 29, 2005 and again upon reconsideration on January 5, 2006.  (AR 11). Subsequently, Plaintiff filed a request for a hearing, which was held on December 20, 2006 before Administrative Law Judge ("ALJ") Bernard Trembly.  (AR 11, 399-401).  Plaintiff did not appear at the hearing due to illness and a supplemental hearing was held on February 22, 2007. (AR 11, 399-401, 403-18).  At the supplemental hearing, Plaintiff appeared with counsel and testified.  (AR 11, 19, 403-18).  Vocational Expert ("VE"), Nelly Katsell, M.S., also appeared.  (AR 11, 403).

On March 28, 2007, the ALJ issued a decision denying benefits.  (AR 11-17).  Plaintiff sought review before the Appeals Council, which denied his request on June 18, 2007.  (AR 4-7).  Plaintiff filed the instant action on August 15, 2007.  (Complaint ("Compl.") at 1). Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on April 16, 2008.

## III.   FACTUAL BACKGROUND

Plaintiff was born December 14, 1943 and was sixty-three years old at the time of the hearing.  (AR 407).  His highest level of education is a masters degree but he completed studies toward a doctorate degree. (AR 106).  He previously worked as an education consultant but has not

2

done so since June 23, 2005.   (AR 17, 316-17, 408).   Plaintiff alleges disability resulting from an intracranial injury that occurred on the night of January 25, 2003.   (AR 11, 81, 93, 132, 160).   Therefore, all relevant medical evidence is subsequent to that date.

## A.   Relevant Medical History

On January 25, 2003, Plaintiff was involved in a vehicle-pedestrian collision and suffered a "closed head injury."   (AR 207-215, 241, 243). Melvyn L. Harris, M.D. treated Plaintiff's injuries in the emergency room at Loma Linda University Medical Center.   (AR 252-54, 256-57).   Dr. Harris assessed Plaintiff's condition, noting that he did not lose consciousness as a result of the accident and was "ambulatory at the scene." (AR 252-53).   Dr. Harris then recommended Plaintiff's discharge. (AR 254).   Two days later, Robert Steele, M.D., evaluated Plaintiff and found that he was "neurologically intact."   (AR 241-42).   Dr. Steele observed that Plaintiff reported "progressively worsening" headaches but performed a CT scan and obtained negative results.   (AR 241, 250, 296). Dr. Steele ultimately discharged Plaintiff.   (AR 242).

On June 16, 2003, Selwyn J. Patrick, M.D., conducted a neurological consultation of Plaintiff and issued a report regarding his injuries. (AR 296-300).   Dr. Patrick concluded that Plaintiff's "current neurological condition remains essentially unremarkable."   (AR 300). He observed that Plaintiff's "symptoms of headaches have resolved" and recommended that Plaintiff undergo psychiatric evaluation to determine the source of his insomnia.   (AR 297, 300).   Dr. Patrick prescribed Trazodone to treat Plaintiff's condition.   (AR 300).   On July 8, 2003,

3

Brent Pratley, M.D., also prescribed Dalmane for the same purpose.   (AR 302).

Plaintiff's primary treating physician is Pranav R. Mehta, M.D. (AR 309-14, 355-81).  Plaintiff visited Dr. Mehta consistently between March 31, 2004 and February 23, 2007.  (AR 309-14, 355-81).  Dr. Mehta's records indicate that Plaintiff reported persistent insomnia that was treated with medication such as Ambien, Lunesta, Diazepan and Valium. (AR 309-12, 356-64, 369-79).  Dr. Mehta also recommended that Plaintiff avoid caffeine after two o'clock p.m. and continue to exercise.   (AR 312).   On February 25, 2005, Dr. Mehta encouraged Plaintiff to "keep looking for jobs."   (AR 309).

Additionally, Dr. Mehta provided an official opinion in support of Plaintiff's disability on February 23, 2007.   (AR 381).   This one-page report explained the events of Plaintiff's car accident and stated, "[a]s a consequence of his injuries, I do not believe Mr. Colburn would have been able to sustain a regular [eight] hour work day or a [forty] hour work week until February 21, 2006.  After February 21, 2006, Mr. Colburn has continued to experience injury-related symptoms."  (AR 381).

The Disability Determination Services' ("DDS") non-examining physician, Stephen C. Swan, M.D., specifically evaluated Plaintiff's residual functional capacity ("RFC")[1] on June 13, 2005.   (AR 344-51). Dr. Swan observed that Plaintiff can occasionally lift or carry fifty

---

[1]    Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."   20 C.F.R. § 416.945(a).

pounds, frequently lift or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour day and sit about six hours in an eight-hour day. (AR 345). He found that Plaintiff is unlimited in his ability to push and/or pull and can frequently balance, stoop, kneel, crouch and crawl. (AR 345-46). Additionally, he determined that Plaintiff has no manipulative, communicative or visual limitations. (AR 347-48). He found that Plaintiff's only environmental limitation is the need to avoid hazards. (AR 348).

**B.   Plaintiff's Testimony**

At the supplemental hearing, Plaintiff testified that he suffers from "intractable insomnia." (AR 409). He explained that he currently takes Lunesta, Ambien and Valium to treat this condition but that the side effects of the medication and the lack of sleep significantly impair his ability to function in the workplace. (AR 410-13). Plaintiff claimed that as a result of the accident, he was unable to continue his work creating speech recognition technology for use in educational curriculum. (AR 408-12). When asked about his current work, Plaintiff admitted that he is now "doing database programming." (AR 412).

## IV.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him

from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.   20 C.F.R. §§ 404.1520, 416.920.   The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled.   If not, proceed to step two.

(2)   Is the claimant's impairment severe?    If not, the claimant is found not disabled.   If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.   If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?   If so, the claimant is found not disabled.   If not, proceed to step five.

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.   20 C.F.R. §§ 404.1520, 416.910.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.   THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process to determine that Plaintiff is not under a disability, as defined in the

7

Social Security Act.   (AR 12-17).   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability.   (AR 13).   At step two, the ALJ found that Plaintiff's "insomnia secondary to an intracranial injury" is a severe impairment. (AR 13).   The ALJ also found that Plaintiff does not suffer from a severe mental impairment.   (AR 14).   He explained that no evidence exists in the record to support this contention.   (AR 14).

At step three, the ALJ observed that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14).   The ALJ assessed Plaintiff's RFC, concluding that Plaintiff has no mental or exertional limitations except for "the need to avoid concentrated exposure to hazards due to intermittent fatigue secondary to insomnia."   (AR 14).   He also found that the evidence of record supports Plaintiff's medically determinable impairment but that Plaintiff's statements regarding "the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."   (AR 16). In support of this finding the ALJ offered the following:

> First, the objective medical evidence does not show pathology reasonably likely to cause the debilitating symptoms alleged. Second, [Plaintiff's] treatment has been routine or conservative in nature. Third, the record reflects some gaps in treatment . . . indicating that [Plaintiff's] symptoms and limitations have not been as serious as has been alleged . . . Fourth, [Plaintiff] is not taking medications of a type or dosage consistent with his allegations. Fifth, the record

8

does not indicate that [Plaintiff] suffers from debilitating side effects from his medication.  <u>Sixth</u>, no treating or examining physician has opined that [Plaintiff] is totally and permanently disabled from all work.  <u>Seventh</u>, [Plaintiff] was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties. <u>Eighth</u> . . . [Plaintiff] has described daily activities which are not limited to the extent one would expect, given . . . disabling symptoms and limitations.

(AR 16) (emphasis in original).

At this step, the ALJ also rejected the opinion of Plaintiff's treating physician, Dr. Mehta.  (AR 16).  After considering the evidence as a whole, the ALJ observed that Dr. Mehta's opinion is "not well supported by medically acceptable clinical and laboratory diagnostic techniques."  (AR 16).  He found that Dr. Mehta's opinion relies "solely upon the claimant's subjective complaints" and "is not supported by the other evidence of record."  (AR 16).

Finally, at step four, the ALJ found that Plaintiff is capable of performing his past relevant work as an education consultant.  (AR 17). The ALJ explained that the Dictionary of Occupational Titles ("DOT") classifies an education consultant as skilled work with a sedentary exertional level.  (AR 17).  Comparing Plaintiff's RFC to this classification, the ALJ concluded that Plaintiff can continue to perform this type of work as it was actually performed.  (AR 17).  Accordingly, the ALJ concluded that Plaintiff is not disabled.  (AR 17).

# VI.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

# VII.   DISCUSSION

Plaintiff contends that the ALJ erred for three reasons. (Jt. Stip. at 2). First, he argues that the ALJ failed to appropriately consider the treating physician's opinion. (Jt. Stip. at 3-5). Second, he asserts the ALJ improperly rejected Plaintiff's credibility. (Jt. Stip. at 8-13). Third, and finally, Plaintiff contends that the ALJ

wrongly determined that Plaintiff can return to his past relevant work. (Jt. Stip. at 15-17). For the reasons discussed below, the Court disagrees with each of Plaintiff's contentions and affirms the ALJ's decision.

## A.   The ALJ Properly Considered The Treating Physician's Opinion In Assessing Plaintiff's Disability

Plaintiff contends that the ALJ improperly rejected the opinion of treating physician, Dr. Mehta. (Jt. Stip. at 3-5). He complains that the ALJ did not offer specific and legitimate reasons supported by substantial evidence in the record for rejecting the doctor's opinion. (Jt. Stip. at 4-5). Additionally, Plaintiff argues that Dr. Mehta's report was ambiguous and thus that the ALJ had a duty to contact the doctor and clarify the record. (Jt. Stip. at 3). Plaintiff's claims do not warrant relief.

Although a treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject the opinion for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even when the treating physician's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating physician's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record

for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1989)).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  See Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  "When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict."  Id.

Furthermore, the ALJ has an affirmative duty to fully and fairly develop the record in a social security case.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information.  Id.; see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (duty not triggered where the ALJ did not make a finding that the medical report was inadequate to make a disability determination).  Otherwise, it is the claimant's duty to prove that he is disabled.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)(citing 42 U.S.C. § 423(d)(5)(Supp. 2001)).

Here, the ALJ properly considered Dr. Mehta's opinion and provided specific and legitimate reasons for rejecting the doctor's conclusions. After evaluating all of the evidence, the ALJ found that Dr. Mehta's

opinion was not well supported by acceptable diagnostic techniques and relied "solely upon [Plaintiff's] subjective complaints." (AR 16); see Tonapetyan, 242 F.3d at 1149 (holding that the ALJ properly rejected a physician's opinion which was premised on claimant's subjective complaints); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (holding that an ALJ may properly consider the extent to which a physician's opinions are premised on claimant's subjective complaints). The ALJ also observed that Dr. Mehta's opinion was not adequately supported by the medical evidence of record and was contradicted by the opinions of other treating and consultative physicians. (AR 16-17).

In fact, Dr. Mehta provides no objective evidence in support of his opinion. (See AR 309-14, 355-81). His one-page report regarding Plaintiff's disability describes the events of Plaintiff's accident and merely asserts that Plaintiff is now unable to work. (AR 381). See Matney, 981 F.2d at 1019 (holding that the ALJ need not accept the opinion of any physician if it is "conclusory" and unsupported by clinical findings). Dr. Mehta's medical records are equally insufficient. (See AR 309-14, 355-81). They consist of thirty total pages, twenty-one of which are prescription requests. (See AR 309-14, 355-81). The remaining nine pages document Plaintiff's allegations of subjective pain and elaborate on the treatment and medication that the doctor prescribed. (See AR 309-14). No objective tests are evidenced. (See AR 309-14). Moreover, Dr. Mehta's opinion is directly contradicted by Dr. Swan's report concluding that Plaintiff is only limited by the need to avoid hazards. (AR 348); see Andrews, 53 F.3d at 1041 (holding that when the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the

13

opinion of the nontreating source may itself be substantial evidence). In addition, no other doctor in the record found that Plaintiff's insomnia is severe. (See AR 240-381). Thus, the ALJ offered specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mehta's conclusions.

Further, the Court finds that the ALJ's duty to develop the record was not triggered in this case because there were no conflicts or ambiguity that needed to be resolved. The ALJ properly observed that Dr. Mehta's opinion was not deserving of controlling weight and was insufficient to support a disability decision. (AR 16-17). Accordingly, the ALJ relied on the record as a whole, including opinions of the other experts, to conclude that Plaintiff is not disabled. (See AR 13-17). No doctor in the record opined that Plaintiff is permanently incapable of continuing work (AR 14) and Dr. Swan specifically found that Plaintiff can perform most tasks so long as he avoids hazards. (AR 344-51). Furthermore, Plaintiff admits that he is capable of doing "database programming." (See AR 412). Thus, the ALJ relied on sufficient unambiguous evidence to find that Plaintiff is not disabled. Therefore his duty to further develop the record was not triggered.

In sum, the ALJ provided specific and legitimate reasons for rejecting the treating physician's opinion and these reasons were supported by substantial evidence in the record. The ALJ had no duty to further develop the record because it was not ambiguous and there were no conflicts in the credible evidence. Accordingly, the ALJ properly considered the treating physician's opinion and Plaintiff's claims do not warrant relief.

14

**B.  The ALJ Properly Rejected Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ inappropriately found him not credible.  (Jt. Stip. at 8-13).  He claims that the ALJ's reasons for rejecting his allegations of subjective symptoms are not clear and convincing and are not supported by the record.  (Id.).  Thus, Plaintiff asserts that the ALJ's decision was error and warrants remand.  (Jt. Stip. at 13).  The Court disagrees.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first evaluate whether the claimant presented objective medical evidence of an underlying impairment which could "reasonably be expected to produce" the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A) (1998)).  Once, the claimant meets this burden, the ALJ may reject a claimant's testimony only if he makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief."  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  Unless there is affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.3d at 834 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).  If the ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court will not engage in second guessing.  See Thomas, 278 F.3d at 959.  However, the ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.  Smolen, 80 F.3d at 1284.

15

In making a credibility determination, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature severity and effect of the symptoms alleged. Id.; Thomas, 278 F.3d at 958-59. While subjective pain testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Here, the ALJ determined that Plaintiff's medically determinable impairment could reasonably produce the symptoms alleged, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 16). The ALJ provided several clear and convincing reasons supported by substantial evidence in the record in support of this determination.

First, the ALJ specifically considered Plaintiff's relevant medical history. (AR 16). The ALJ observed that Plaintiff's treatment has been "routine or conservative." (AR 16). See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding that "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an

16

impairment).   He noted multiple "gaps in treatment" and found that
Plaintiff is not taking medication "of a type and dosage consistent with
his allegations."   (AR 16).   See Flaten v. Sec'y of Health and Human
Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (where a claimant sought
treatment for back pain on only two isolated occasions, "the ALJ was
entitled to draw an inference" from the lack of medical care); see also
Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that
infrequent treatment may be used by the ALJ to refute allegations of
disabling pain).   The ALJ found that Plaintiff's medication does not
have "debilitating side effects" and observed that "no . . . physician
has opined that [Plaintiff] is totally and permanently disabled from all
work." (AR 16).

Additionally, the ALJ determined that Plaintiff's purported daily
activities "are not limited to the extent one would expect, given
complaints of disabling symptoms and limitations."   (AR 16).   See
Thomas, 278 F.3d at 958-59 (holding that the ALJ properly relied on the
inconsistencies between a plaintiff's complaints and daily activities
in assessing credibility).   Plaintiff lives alone and makes his own
meals.   (AR 124).   He reads the news, searches the internet for jobs and
can usually drive.   (AR 124, 127).   He admits that he has little
difficulty doing household chores (AR 124-28) and testified that he is
working as a "database programmer." (AR 412).   The ALJ found that these
activities contradict Plaintiff's subjective testimony.

Moreover, the ALJ observed that Plaintiff was able to participate
fully in the administrative proceedings.   (AR 16).   See Drouin v.
Sullivan, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (holding that an ALJ's

17

observations during the hearing, along with other evidence, can constitute substantial evidence supporting a credibility assessment); Thomas, 278 F.3d at 960 (discussing the ALJ's use of "ordinary techniques of credibility evaluation" such as claimant's demeanor at the hearing). Plaintiff was able to respond to questions without any apparent difficulty and did not appear sleepy at the hearing. (See AR 16, 403-18). This indicates that the alleged "limiting effects of [Plaintiff's] symptoms are not entirely credible." (AR 16).

Significantly, the ALJ also found that Plaintiff did not present objective medical evidence that shows a "pathology reasonably likely to cause the debilitating symptoms alleged." (AR 16). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). As explained above, the ALJ found that no physician opined that Plaintiff's insomnia is so severe that he is disabled from all work. (AR 16). Furthermore, the ALJ properly rejected the opinion of the only physician who supported Plaintiff's disability claims. (See Discussion, infra, Part A (concluding that the ALJ appropriately assessed Dr. Mehta's opinion)); see also Rollins, 261 F.3d at 857 (medical evidence is a relevant factor in determining disabling effects of claimant's symptoms).

Thus, the ALJ provided several clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's credibility. Therefore, Plaintiff is not entitled to relief on this issue.

**C.  The ALJ Properly Found That Plaintiff Can Return To His Past Relevant Work**

Plaintiff complains that the ALJ wrongly decided that he is able to return to his past relevant work. (Jt. Stip. at 15-18). Specifically, Plaintiff asserts that the ALJ failed to discuss the physical and mental demands required of his past work as a education consultant and that the ALJ neglected to compare these demands with Plaintiff's actual RFC. (Jt. Stip at 15-18). Plaintiff claims that this error warrants relief. (Jt. Stip. at 18). The Court disagrees.

At step four of the five-step sequential evaluation, the claimant carries the burden of proving that he can no longer perform his past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Specifically, the claimant is required to prove that he cannot return to his "former type of work" as that work is generally performed, not just that he cannot return to his particular job. See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). Although the burden of proof lies with the plaintiff at step four, the ALJ has the duty to make factual findings to support his ultimate conclusion. Pinto, 249 F.3d at 844. The ALJ can meet this burden by comparing the physical and mental demands of the past relevant work with the plaintiff's actual RFC. Id. at 845.

In this case, the ALJ determined that Plaintiff's former relevant work is classified as skilled labor and requires a sedentary exertional level. (AR 17). Additionally, the ALJ found that Plaintiff has no mental or exertional limitations except for the need to avoid

19

"concentrated exposure to hazards." (AR 14). Thus, the ALJ sufficiently compared Plaintiff's RFC with the physical and mental requirements of an education consultant.

Moreover, even if the ALJ had neglected to compare Plaintiff's RFC to the physical and mental demands of an education consultant, the error was not prejudicial because Plaintiff is clearly capable of performing his past relevant work.[3] See Curry v. Sullivan, 925 F.2d 1127. 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); Booz v. Sec'y of Health and Human

---

[3]  The DOT defines the responsibilities of an education consultant as follows,

> Plans and coordinates educational policies for specific subject area or grade level: Develops programs for in-service education of teaching personnel. Confers with federal, state, and local school officials to develop curricula and establish guidelines for educational programs. Confers with lay and professional groups to disseminate and receive input on teaching methods. Reviews and evaluates cirricula for use in schools and assists in adaptation to local needs. Interprets and enforces provisions of state education codes and rules and regulations of State Board of Education. Conducts or participates in workshops, committees and conferences designed to promote intellectual, social, and physical welfare of students. Studies and prepares recommendations on instructional materials, teaching aids, and related equipment. Prepares or approves manuals, guidelines, and reports on state educational policies and practices for distribution to school districts. Advises school officials on implementation of state and federal programs and procedures. Conducts research into areas, such as teaching methods and techniques. May perform tasks at local school district level or as independent consultant in area of expertise. May be designated as consultant in specific area, such as reading, elementary education or audio-visual education.

DOT No. 099.167-014.

Servs., 734 F.2d 1378, 1382-81 (9th Cir. 1984) (same). According to the DOT, an education consultant requires a sedentary strength level. DOT No. 099.167-014. This includes the ability to exert "ten pounds of force occasionally . . . and/or a negligible amount of force frequently to lift, carry, push, pull and otherwise move objects." Id. "Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." Id. An education consultant also requires a high level of reasoning, math and language skills. See id. Education consultants must "[a]pply principles of logic or scientific thinking to a wide range of . . . problems." Id. They must work with mathematical statistics, experimental designs and read various types of written materials. See id.

Here, the ALJ found that Plaintiff has no mental or physical limitations that prevent him from continuing this work. (AR 14). Plaintiff is cogent, well-spoken and highly educated. (See AR 16, 106, 407-10). He was fully able to participate in the administrative hearing (See AR 16, 405-17) and averred that he currently works as a database programmer. (AR 412). Plaintiff admits that he is capable of normal social interaction and frequently reads. (See AR 111, 114, 124, 128 (Plaintiff contending that he sends emails to friends, talks with others and reads daily)). In addition, the record is littered with Plaintiff's own research, indicating an ability to effectively coordinate and evaluate information. (See e.g. AR 150-57). The ALJ found that Plaintiff's only limitation is the need to avoid "concentrated exposure to hazards." (AR 14). Thus, Plaintiff's RFC indicates that he is capable of completing all of the tasks associated with his past relevant work.

In sum, the ALJ provided a specific comparison between Plaintiff's RFC and the demands of his past work. Moreover, even if the ALJ did not provide a sufficient comparison, the error was harmless as Plaintiff is capable of completing his previous relevant work as an education consultant. Thus, Plaintiff's claim is without merit.

## VIII.   CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 1, 2008                          /S/

                                   _____
                                   SUZANNE H. SEGAL
                                   UNITED STATES MAGISTRATE JUDGE

22